**Holly Ingram MONKS, Clifford McGee, Mark McCall, and Christopher Tinter, Plaintiffs–Appellants,**

v.

**GENERAL ELECTRIC COMPANY and Arkwin Industries, Inc., Defendants–Appellees.**

No. 89–6374.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 16, 1990.

Decided Dec. 3, 1990.

Richard N. Countiss (argued), James P. Piper, Law Offices of Windle Turley, Dallas, Tex., for plaintiffs-appellants.

James M. Doran, Jr. (argued), Manier, Herod, Hollabaugh & Smith, Nashville, Tenn., for General Elec. Co.

Larry D. Woods, Woods & Woods, Nashville, Tenn., John J. Tigert, Kathryn A. Ledig, Washington, D.C., for Arkwin Industries, Inc.

Before JONES and RYAN, Circuit Judges, and SILER, Chief District Judge[*].

NATHANIEL R. JONES, Circuit Judge.

This is a products liability action by military personnel injured in a helicopter crash against the manufacturers of the helicopter's engine. Although we find that the district court erred in not allowing plaintiffs to present their affidavit testimony, we nevertheless affirm the district court's grant of summary judgment in favor of defendants.

## I

Plaintiff-appellants Holly Ingram Monks, Clifford McGee, Mark McCall, and Christopher Tinter ("plaintiffs") were members of the United States Army stationed at Fort Campbell, Kentucky. On February 26, 1985, plaintiffs were performing an authorized training maneuver in a Sikorsky Black Hawk helicopter when the helicopter developed engine trouble and crashed in Tennessee. All four plaintiffs were injured in the crash.

On February 11, 1986, plaintiffs filed this diversity suit in the United States District Court for the Middle District of Tennessee against General Electric Corporation ("GE"), Arkwin Industries, Inc. ("Arkwin"), and United Technologies Corpora-

[*] The Honorable Eugene Siler, Jr., Chief District Judge for the Eastern District of Kentucky, sitting by designation.

tion.[1] GE was the manufacturer of the helicopter's engine. The engine included a "fuel sequence valve" and an "electronic control unit", both of which were manufactured by Arkwin. Plaintiffs allege that the fuel sequence valve and the electronic control unit were unreasonably dangerous and defective under Tennessee products liability law.

In October 1986, GE produced documents relating to the component parts, and plaintiffs deposed three GE employees. The case was placed on the retired docket on May 18, 1987, pending the decision of the United States Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). *Boyle* held that the government contractor defense protects manufacturers of defectively designed equipment if (1) the government approved the specifications, (2) the equipment conformed to the specifications, and (3) the manufacturer warned the government about dangers that were known to the manufacturer but not the government. *Id.* 108 S.Ct. at 2518. This case was reinstated on the active docket on July 13, 1988.

GE and Arkwin moved for summary judgment on August 29, 1988, on two grounds: first, the government contractor defense as set forth in *Boyle,* and second, the insufficiency of plaintiffs' evidence. The defendants submitted affidavits from two GE employees and one Arkwin employee. These affidavits sought to establish that the engine was developed in response to a U.S. Army proposal which contained detailed specifications, that the Army was involved in all stages of the engine's development, and that the engine "complied with all terms of the contract, including the design and testing specifications of the United States Army." J.App. at 45.

In response to defendants' summary judgment motion, plaintiffs submitted an affidavit from Matthew Ellis, a former head of the Aircraft Safety Investigations Department of United Technologies' Sikorsky Aircraft Division. The relevant portion of Ellis' affidavit states:

6. In investigating this accident, I have reviewed the depositions of General Electric personnel and analyzed other data obtained from the United States Government under the Freedom of Information Act. The review included the United States Army official report of the investigation. Additional reviews of historical data of all UH60 aircraft were conducted.

7. It is my opinion that the accident was caused by starvation of fuel to both engines that resulted in the loss of power (sufficient to sustain flight) and made the aircraft non-flyable. Based on information provided, it is apparent that the primary cause of this accident was a malfunction of the fuel systems, brought about by manufacturing defects of the sequencing valve and/or variation from published specifications. The mechanical linkage from the pilot station to the engines were examined by experts from the U.S. Army and Sikorsky aircraft, and no faults were noted in the linkage and/or the position of the controls. Later evaluation by the United States Army resulted in a discovery of an intermittent failure in the sequence valve, and revealed facts that supported the premise that the aircraft experienced a dual engine shutdown during flight.

J.App. at 91. Based on the Ellis affidavit, plaintiffs filed an amended response to the summary judgment motion arguing that an issue of material fact existed as to whether the engine and its component parts conformed to contract specifications. On February 1, 1989, GE moved to strike the Ellis affidavit on the grounds that the affidavit did not "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). On July 27, 1989, the Magistrate entered his Report and Recommendation in which he recommended that the Ellis affidavit be stricken because Ellis, as an expert witness, did not reveal the bases of his opinion, in violation

---

1. United Technologies manufactured the helicopter. Plaintiffs filed an amended notice of dismissal on February 23, 1989, dismissing United Technologies as a defendant.

of Fed.R.Evid. 703. The Magistrate then recommended that defendants' summary judgment motion be granted, and also concluded that GE and Arkwin were entitled to the government contractor defense. On September 26, 1989, Judge John T. Nixon adopted the Magistrate's report in its entirety and granted defendants' motion for summary judgment. This timely appeal followed.

## II

### A

■ Our review of the district court's grant of summary judgment is *de novo.* The proper inquiry on appeal from a grant of summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

We first address plaintiffs' argument that the district court erred in finding the Ellis affidavit inadmissible under Fed.R. Evid. 703. Rule 703 states, in full, that:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The Magistrate relied on the reasoning of the D.C. Circuit in *Merit Motors v. Chrysler Corp.,* 569 F.2d 666, 673 (D.C.Cir. 1977), which held that Rule 703 does not prevent a court from granting summary judgment even when the non-moving party produces an expert's affidavit to support its position. The Magistrate concluded that "Ellis' affidavit does not meet the *Merit Motors* standard" and should be stricken. J.App. at 111. The D.C. Circuit in *Merit Motors* affirmed the grant of summary judgment because the expert admitted that he was unfamiliar with the record in the case; therefore, his opinion had no

factual basis and constituted "theoretical speculation." *Id.* at 673. In the instant case, the Magistrate concluded that Ellis' affidavit did not "meet the *Merit Motors* standard" because Ellis did not specify which GE depositions or Army documents supported his opinion. J.App. at 111.

■ We reject the district court's application of *Merit Motors* to strike the Ellis affidavit. *Merit Motors* did *not* address itself to the issue of whether affidavits should be stricken at the summary judgment stage. To the extent that *Merit Motors* articulates any type of standard, it is that affidavits by experts who have not familiarized themselves with the record are insufficient to withstand a summary judgment motion. Under Fed.R.Civ.P. 56(e), affidavits submitted in opposition to a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Ellis based his conclusions on depositions, government documents, official Army reports, and historical data of the helicopter. Although it did not go into extensive detail, the affidavit was more than a bare, conclusory allegation that defendants' negligence caused the helicopter accident. Ellis' qualifications as an expert were not in dispute. Moreover, Fed.R. Evid. 705 allows an expert to testify "in terms of opinion or inference and give reasons therefore without prior disclosure of the underlying facts or data[.]" Thus, we conclude that the district court erred in not allowing the plaintiffs to submit the affidavit of their expert. *See Christophersen v. Allied–Signal Corp.,* 902 F.2d 362, 364 (5th Cir.1990) (trial court's decision to exclude expert's affidavit as unreliable may be reversed only if "manifestly erroneous"). Nevertheless, we find not admitting the affidavit to be harmless error because of our conclusion that, even with the affidavit, plaintiffs' evidence fails to defeat defendants' motion for summary judgment.

### B

■ As we have attempted to make clear, the issue of the admissibility of an

expert's affidavit is distinct from the issue of whether the affidavit is sufficient to withstand a summary judgment motion. *Bieghler v. Kleppe*, 633 F.2d 531, 533–34 (9th Cir.1980) (separate inquiries regarding admissibility of expert's affidavit and sufficiency of the affidavit to withstand summary judgment). As a result, we now consider whether the Ellis affidavit "set[s] forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In explaining this requirement, the Supreme Court has stated that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Under the Tennessee products liability statute, which the Magistrate found to be the applicable substantive law, a product is defective if it is "unsafe for normal or anticipatable handling and consumption." Tenn.Code Ann. § 29–28–102(2) (1980). In addition, a product is unreasonably dangerous if the product "is dangerous to an extent beyond that which would be contemplated by the ordinary consumer ... or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that he knew of its dangerous condition." *Id.* at § 29–28–102(8).

Ellis' affidavit addresses itself to the causes of the accident, and concludes that the crash was "brought about by manufacturing defects of the sequencing valve and/or variation from published specifications." J.App. at 91. The Ellis affidavit is the only piece of evidence produced by plaintiffs, despite the fact that they have had over two years to produce evidence that the fuel sequence valve or electronic control unit were defective or unreasonably dangerous. Such minimal evidence should not be permitted to defeat a motion for summary judgment when there has been

sufficient opportunity for discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989) (movant can satisfy burden by demonstrating that non-movant, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."). As Ellis' affidavit would under no circumstances be sufficient, by itself, to establish an element of plaintiff's case, we conclude that summary judgment for defendants was properly granted.[2]

### III

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of defendant.

**2.** Given our conclusion that summary judgment was properly granted for defendants on the basis of the insufficiency of plaintiffs' evidence, we find it unnecessary to address the district

court's finding "that GE and Arkwin have established their entitlement to [the government contractor defense.]". J.App. at 118.