Filed 5/11/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 80

Allen Perius, Plaintiff and Appellant

v.

Nodak Mutual Insurance Company, Defendant and Appellee

         and

Jacob Kessler,                                                                                               Defendant

No. 20090239

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Bruce B. Haskell, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Crothers, Justice.

Scott Andrew Hager, 1715 Burnt Boat Drive, Madison Suite, Bismarck, N.D. 58503, for plaintiff and appellant.

Mitchell D. Armstrong, P.O. Box 460, Bismarck, N.D. 58502-0460, for defendant and appellee.

Perius v. Nodak Mutual Ins. Co.

No. 20090239

Crothers, Justice.

[¶1] Allen Perius appeals from a summary judgment dismissing his action against his motor vehicle insurer, Nodak Mutual Insurance Company, for no-fault benefits and for uninsured motorist coverage.  We conclude there are disputed issues of material fact about whether Perius’s claimed damages were proximately caused by a motor vehicle accident, and we reverse and remand.

I

[¶2] On October 8, 2004, Perius was driving his motor vehicle when he was involved in an accident with an uninsured motor vehicle driven by Jacob Kessler.  Perius insured his motor vehicle with Nodak, which provided coverage for basic no-

fault benefits and for uninsured motorist benefits.  Perius claimed he injured his neck and upper back in the accident, and on October 12, 2004, he sought medical treatment from his primary care physician, Dr. Ron Tello, who prescribed physical therapy.  Nodak paid $1,020.75 in no-fault benefits for Perius’s consultation with Dr. Tello and for the prescribed physical therapy.  Perius completed the prescribed  physical therapy on November 30, 2004, and he did not seek additional medical treatment until March 2005, when he saw a chiropractor.  Perius submitted those chiropractic bills to Nodak for payment as no-fault benefits.  Nodak requested an independent medical examination for Perius, and after receiving the results of that examination, Nodak denied Perius payment for any medical treatment after December 31, 2004, concluding that treatment was not related to the motor vehicle accident.  

[¶3] In 2007, Perius sued Kessler and Nodak, alleging Kessler negligently operated his uninsured vehicle and proximately caused Perius “severe injuries including but not limited to injuries to the spine and soft tissues surrounding the spine.”  Perius also alleged Nodak breached its insurance contract with him for uninsured motorist coverage and for no-fault benefits.  Nodak denied liability, asserting Perius’s claimed injuries were the result of an existing condition and were not proximately caused by the October 2004 accident.  Nodak also asserted a cross-claim against Kessler regarding Perius’s uninsured motorist claim.  Kessler did not answer the claims against him. 

[¶4] A scheduling order required Perius to disclose his experts by May 12, 2009.  On May 10, 2009, Perius provided Nodak with a list of 11 medical providers  expected to testify about “causation and damages.”  Nodak requested further information, stating Perius’s disclosure of experts was insufficient because it “provides no meaningful information and does not identify ‘the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion’ as required under [N.D.R.Civ.P.] 26.”  

[¶5] In June 2009, Nodak moved for summary judgment, claiming Perius’s medical treatment after December 31, 2004, was for an existing degenerative arthritis and no competent, admissible evidence established his claimed injuries were proximately caused by the motor vehicle accident.  Perius resisted Nodak’s motion for summary judgment, claiming he had sustained a serious injury under no-fault law because he had incurred more than $16,000 in medical expenses for treatment directly related to injuries sustained in the accident.  Perius claimed his medical providers had diagnosed “severe arthritis” from the accident which  had “shifted around someplace in my neck where it bothers me more.”  Perius submitted affidavits of two of his treating medical providers, Dr. Michael Quast and Dr. Kelly Remillard.  Dr. Quast’s affidavit said Perius “is continuing to have persistent pain and I believe it is a result of traumatic arthritis from the injury” sustained in the motor vehicle accident.  Dr. Quast’s affidavit further stated, “To a reasonable degree of medical certainty, I believe the medical treatment I have provided Allen Perius and associated medical expenses are reasonable, necessary and related to the October 8, 2004 motor vehicle accident.” Dr. Remillard’s affidavit said,“To a reasonable degree of medical certainty, I believe the medical/chiropractic treatment I have provided Allen Perius and associated medical/chiropractic expenses are reasonable, necessary and related to the October 8, 2004 motor vehicle accident.”  Nodak responded that the affidavits of Dr. Quast and Dr. Remillard were conclusory and did not provide competent, admissible evidence of causation and that those affidavits should be excluded because they did not comply with applicable discovery rules.  

[¶6] The district court granted Nodak summary judgment, concluding Perius failed to produce competent, admissible evidence creating a factual issue that his claimed injuries were proximately caused by the accident.  In its oral decision,  the court stated:

“[Perius] didn’t comply in a meaningful way with the scheduling order in terms of discovery responses regarding the expert disclosure.  Those were due on May 12th, and my review of the materials indicate that [Perius’s] discovery response was basically just a list of a number of medical providers and that the only disclosure as to subject matter, and the substance of the testimony was that they would testify as to causation and damages.  I don’t believe that that is what the Supreme Court contemplated in case law that talks about full, complete and fair disclosure of subject matter and the substance of the testimony.  I just believe that there has to be a lot more than that.  And I realize in the context of a summary judgment motion, a discovery issue isn’t really dispositive, but what that leads me to is the competency admissibility of the affidavits that were provided by Dr. Quast and Dr. Remillard.  They, as [Nodak] argued, are basically conclusory statements that the injury was caused by the accident, but there’s no basis for their opinions provided.  There’s nothing on which any person could look at them and say okay, this opinion is based on this evidence, or this review of the records, or this statement by [Perius] or anything else.  They’re just conclusory statements with absolutely no support.  And I just believe that that is not competent admissible evidence.  It’s well, first of all, you could make a pretty good argument that it isn’t even accurate because there was some evidence of previous injuries.  And I realize [counsel for Perius], you know, I guess didn’t go in real detail, but there was certainly evidence of some previous issues at least with the back.  And you may be correct, not with the neck, but again I don’t believe those affidavits are sufficient[ly] detailed to stand up to the test of competent admissible evidence on the issue of causation.  You know, again I’m getting repetitive here, but the fact is is that these affidavits merely state that the injuries were caused by the accident, or secondary to the accident, and there’s absolutely no basis for those opinions.  So on the state of the evidence before the Court, at this point, I don’t find that there are any material issues of fact as to causation or damages.  There was insufficient evidence provided by [Perius], and therefore, the motion for summary judgment will be granted.”  

[¶7] In its written decision granting Nodak summary judgment, the district court explained the affidavits submitted by Perius “contain only unsupported, conclusory statements without any basis or support, and do not constitute competent, admissible evidence.”  The court also said Perius had “failed to comply with the scheduling order in this matter in a meaningful way with respect to disclosure of expert witnesses.”  The court further explained, “Nodak shall not be bound heretofore with respect to any action or ruling on [Perius’s] claim against defendant Kessler.”  The court subsequently entered a default judgment against Kessler for $264,400.

II

[¶8] The district court said Perius had failed to comply in a “meaningful way” with a scheduling order to disclose expert witnesses, but the court did not exclude Perius’s affidavits nor dismiss his action as a discovery sanction.  
See
 
Wolf v. Estate of Seright
, 1997 ND 240, ¶¶ 16-18, 573 N.W.2d 161 (stating trial court has discretionary authority to decide appropriate sanction for discovery violations and may exclude expert testimony outside scope of answers to interrogatories).  Rather, the court decided Perius failed to provide competent, admissible evidence to raise a material issue of fact about causation and granted summary judgment for Nodak on Perius’s claims for no-fault benefits and for uninsured coverage.  

[¶9] The district court dismissed Perius’s action by summary judgment, and we therefore review the court’s decision under the requirements for summary judgment, which “is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no disputed issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.”  
Klimple v. Bahl
, 2007 ND 13, ¶ 4, 727 N.W.2d 256.  Evidence presented on a motion for summary judgment is viewed in the light most favorable to the party opposing the motion, and that party is given the benefit of all favorable inferences which reasonably can be drawn from the evidence.  
Halvorson v. Sentry Ins.
, 2008 ND 205, ¶ 5, 757 N.W.2d 398.  Summary judgment is appropriate “‘against a party who fails to establish the existence of a factual dispute as to an essential element of his claim and on which he will bear the burden of proof at trial.’”  
Id.
 (quoting 
Pulkrabek v. Sletten
, 557 N.W.2d 225, 226 (N.D. 1996)).  A party seeking summary judgment has the initial burden of showing that no dispute exists as to either material facts or inferences to be drawn from undisputed facts and that the movant is entitled to judgment as a matter of law.  
Halvorson
, at ¶ 5.  If the movant meets that initial burden, the opposing party may not simply rely upon the pleadings or upon unsupported conclusory allegations, but “‘must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court’s attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.’” 
Beckler v. Bismarck Pub. Sch. Dist.
, 2006 ND 58, ¶ 7, 711 N.W.2d 172 (quoting 
Peterson v. Zerr
, 477 N.W.2d 230, 234 (N.D. 1991)).

III

[¶10] Perius’s lawsuit against Nodak seeks recovery for no-fault benefits and for uninsured motorist coverage for damages allegedly caused by Kessler.  

[¶11] Under N.D.C.C. § 26.1-41-06(1)(a), a “basic no-fault insurer of a secured motor vehicle shall pay basic no-fault benefits without regard to fault for economic loss resulting from . . . [a]ccidental bodily injury sustained . . . by the owner of the motor vehicle . . . [w]hile occupying any motor vehicle.”  “‘Basic no-fault benefits’ means benefits for economic loss resulting from accidental bodily injury,” and “‘[e]conomic loss’ means medical expenses, rehabilitation expenses, work loss, replacement services loss, survivors’ income loss, survivors’ replacement services loss, and funeral, cremation, and burial expenses.”  N.D.C.C. § 26.1-41-01(2) and (7).  To recover on his claim against Nodak for no-fault benefits under those statutes, Perius must “prove that [his] injuries qualify as ‘accidental bodily injury,’ which is injury ‘arising out of the operation of a motor vehicle . . . and which is accidental as to the person claiming basic or optional excess no-fault benefits.’”  
Halvorson
, 2008 ND 205, ¶ 7, 757 N.W.2d 398 (quoting N.D.C.C. § 26.1-41-01(1)). 

[¶12] To recover on his claim against Nodak for uninsured motorist coverage, Perius must prove liability by an uninsured  driver.  
See
 N.D.C.C. §§ 26.1-40-15.1(3) and 26.1-40-15.2(1).  The parties do not dispute that Kessler was uninsured, and as an insurer providing Perius with uninsured motorist coverage, Nodak was entitled to “contest and press all defenses that the uninsured motorist could press.”  N.D.C.C. § 26.1-40-15.2(4).  Uninsured benefits are not payable “[f]or damages for pain, suffering, mental anguish, inconvenience, or other noneconomic loss which could not have been recovered had the owner or operator of the motor vehicle responsible for such loss maintained the security required under any applicable state no-fault law.”  N.D.C.C. § 26.1-40-15.6(3).  Under N.D.C.C. § 26.1-41-08, a plaintiff cannot recover non-economic damages from a secured person unless the plaintiff has suffered a “serious injury” which is defined by N.D.C.C. § 26.1-41-01(21), as “accidental bodily injury which results in death, dismemberment, serious and permanent disfigurement or disability beyond sixty days, or medical expenses in excess of two thousand five hundred dollars.”  

[¶13] In his negligence claim against Kessler, Perius must prove that Kessler owed him a duty, that Kessler failed to discharge that duty, and that Kessler’s negligence proximately caused Perius “serious injury.”  
See
 
Klimple
, 2007 ND 13, ¶ 5, 727 N.W.2d 256.  “‘A proximate cause is a cause which, in natural and continuous sequence, produces the injury and without which the injury would not have occurred.’”  
Id.
 (quoting 
Rued Ins., Inc. v. Blackburn, Nickels & Smith, Inc.
, 543 N.W.2d 770, 773 (N.D. 1996)).  “When a defendant’s negligence aggravates a preexisting injury, the defendant must compensate the victim for the full extent of the aggravation but is not liable for the preexisting condition itself.”  
Klimple
, at ¶ 5.  “Negligence involves questions of fact and is generally inappropriate for summary judgment unless the evidence is such that a reasonable factfinder can reach only one conclusion.”  
Id.

[¶14] Perius argues the opinions of Dr. Quast and Dr. Remillard are admissible evidence that Perius sustained a serious injury proximately caused by the motor vehicle accident.  Nodak counters that the affidavits of Dr. Quast and Dr. Remillard are not competent, admissible evidence that Perius’s medical treatment and injuries were proximately caused by the motor vehicle accident.  Nodak claims Perius failed to present competent, admissible evidence in response to Nodak’s motion for summary judgment to raise a factual issue that the October 2004 accident caused him any economic loss after December 1, 2004, and that he suffered a serious injury necessary to recover for non-economic loss.

[¶15] In 
Klimple
, we said that when a causal relationship between a condition affecting the human body and a motor vehicle accident is not a matter within the common knowledge or comprehension of a lay person, the party bearing the burden of proof must present expert testimony establishing that causal relationship.  2007 ND 13, ¶ 6, 727 N.W.2d 256.  Here, the issue is whether Perius’s injuries and medical condition were proximately caused by the motor vehicle accident, and Perius does not argue that issue is a matter within the common knowledge or comprehension of a lay person.  Consequently, expert medical testimony was required to establish proximate cause.  That requirement in turn hinges on whether the affidavits submitted by Perius were sufficient to raise a genuine issue of material fact to withstand summary judgment and requires us to consider the interplay between expert opinions in affidavits in a motion for summary judgment under N.D.R.Civ.P. 56 and the admissibility of expert testimony under the applicable rules of evidence

[¶16] Under N.D.R.Civ.P. 56(e), affidavits supporting and opposing summary judgment “must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein.”  Materials submitted in opposition to a supported motion for summary judgment “must set forth specific facts showing that there is a genuine issue for trial.”  
Id.
  

[¶17] Affidavits submitted in summary judgment proceedings must be made on personal knowledge.  
See
 
Hummel v. Mid Dakota Clinic
, 526 N.W.2d 704, 707-08 (N.D. 1995) (stating trial court properly refused to consider attorney’s affidavit made on information and belief because affidavit did not comply with Rule 56(e) and was admissible only to facts within personal knowledge of attorney and to which attorney was competent to testify); 
Matter of Estate of Stanton
, 472 N.W.2d 741, 745 (N.D. 1991) (concluding statements in affidavits must be admissible in evidence and inadmissible hearsay statements in affidavits may not be used in summary judgment proceeding); 
Farmers Union Oil Co. v. Harp
, 462 N.W.2d 152, 155-56 (N.D. 1990) (stating facts identified in affidavit must be admissible in evidence to be considered for purpose of summary judgment); 
Luithle v. Taverna
, 214 N.W.2d 117, 124 (N.D. 1973) (stating attorney’s affidavit made on information and belief does not comply with Rule 56(e)).  

[¶18] Affidavits containing conclusory allegations on an essential element of a claim are insufficient to raise a genuine issue of material fact.  
See
 
Skjervem v. Minot State University
, 2003 ND 52, ¶ 18, 658 N.W.2d 750 (stating bare conclusory allegations about defendant’s knowledge of hazardous condition on property was insufficient to raise genuine issue of material fact); 
BTA Oil Producers v. MDU Resources Group
, 2002 ND 55, ¶¶ 49-50, 642 N.W.2d 873 (stating affidavits must set forth specific facts showing genuine issue of material fact and conclusory statements unsupported by specific facts are insufficient to raise a material issue of fact); 
Federal Land Bank v. Asbridge
, 414 N.W.2d 596, 598 (N.D. 1987) (stating “[a]ffidavits containing conclusory statements that are not supported by specific facts are insufficient to raise genuine issues of material fact”).

[¶19] Under N.D.R.Ev. 702, “a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.”  “Testimony in the form of an opinion . . . is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.”  N.D.R.Ev. 704.  An expert’s opinion may be based on facts or data that are not admissible in evidence if the facts or data are of the type reasonably relied upon by experts in the field.  N.D.R.Ev. 703.  Moreover, an expert may testify about an opinion without first testifying to the underlying facts or data unless the court requires otherwise, but the expert may be required to disclose the underlying facts or data on cross-examination.  N.D.R.Ev. 705.  Those rules of evidence for expert opinions reflect some conflict with the language of N.D.R.Civ.P. 56(e) requiring a party opposing summary judgment to “set forth specific facts showing that there is a genuine issue for trial.”  [¶20] The language of N.D.R.Civ.P. 56(e) and N.D.R.Ev. 705 is essentially identical to the language of F.R.Civ.P. 56 and F.R.Ev. 705, and we have recognized that federal court interpretations of substantially similar federal rules may be highly persuasive in construing our rules.  
See
 
Harp
, 462 N.W.2d at 154.

[¶21] Federal courts have decided that although F.R.Ev. 705 permits experts to testify by opinion without disclosing underlying facts or data, affidavits containing expert opinions, like other materials submitted in opposition to a supported motion for summary judgment, must comply with F.R.Civ.P. 56(e) and set forth specific facts showing there is a genuine issue for trial.  
See
 
Hayes v. Douglas Dynamics, Inc.
, 8 F.3d 88, 92 (1st Cir. 1993) (stating in wrongful death action that although expert testimony may be more inferential than testimony by fact witness, in order to survive motion for summary judgment expert affidavits must set forth specific facts under F.R.Civ.P. 56(e) and expert opinion must be more than conclusory assertion about ultimate issue); 
Ambrosini v. Labarroque
, 966 F.2d 1464, 1470 (D.C. Cir. 1992) (recognizing in action alleging prescription drug caused birth defects that admissibility of expert opinion is separate and distinct from whether testimony is sufficient to withstand motion for summary judgment under F.R.Civ.P. 56); 
M & M Med. Supplies and Serv., Inc. v. Pleasant Valley Hosp., Inc.
, 981 F.2d 160, 165 (4th Cir. 1992) (stating in antitrust action that “F.R.Ev. 705 . . . does not alter the requirements of F.R.Civ.P. 56(e) that affidavits submitted in summary judgment proceedings [must] set forth specific facts”); 
Monks v. General Elec. Co.
, 919 F.2d 1189, 1192-93 (6th Cir. 1990) (stating in products liability action that admissibility of expert’s affidavit is separate from whether affidavit is sufficient to withstand summary judgment); 
Mid-State Fertilizer Co. v. Exchange Nat’l Bank
, 877 F.2d 1333, 1338-40 (7th Cir. 1989) (stating in action under federal statute that F.R.Ev. 705 allows expert to present “naked opinion,” but F.R.Civ.P. 56(e) requires affidavits to set forth specific facts; affirming summary judgment that expert’s conclusory affidavit was insufficient to raise factual issue); 
Bulthuis v. Rexall Corp.
, 789 F.2d 1315, 1317-18 (9th Cir. 1985) (stating in products liability action that expert’s affidavit must state specific factual basis to defend summary judgment and doctors’ medical opinions about cause of plaintiff’s cancer disclosed basis for conclusions absent any indication from court that greater detail was necessary); 
Evers v. General Motors, Corp.
, 770 F.2d 984, 986 (11th Cir. 1985) (stating in products liability action that F.R.Ev. “703 and 705 do not alter the requirement of F.R.Civ.P. 56(e) that an affidavit must set forth specific facts in order to have any probative value”); 
Bieghler v. Kleppe
, 633 F.2d 531, 533-34 (9th Cir. 1980) (recognizing in negligence action there are separate inquiries regarding admissibility of expert’s affidavit and sufficiency to withstand summary judgment and stating affidavit provided more than bare conclusion that defendant’s negligence caused accident); 
see
 11 James Wm. Moore, 
Moore’s Federal Practice
 § 56.14[1][e] (3d ed. 2010).  

[¶22] 
State courts similarly have concluded affidavits containing opinion testimony supporting or opposing summary judgment must comply with their jurisdiction’s equivalent of F.R.Civ.P. 56(e).  States addressing the issue have used different approaches and have articulated different descriptions to harmonize their summary judgment rule and their rules regarding testimony of experts.  

[¶23] In a case involving personal injury from a car-bicycle collision, the Alabama Court of Civil Appeals stated that “expert opinion evidence as to the point of impact of a collision is clearly admissible, so long as the expert details the facts upon which his conclusion is based.”  
Stevens v. Stanford
, 766 So. 2d 849, 850 (Ala. Civ. App. 1999).  The court in 
Stevens
 explained:

“A witness, even one qualified as an expert, must have a factual basis for an opinion. Although any challenge to the adequacy of the factual basis for an expert’s opinion normally goes to the weight rather than to the admissibility of the evidence, if the facts relied on by the witness clearly are insufficient to support an opinion, then the challenge may go even to the admissibility of the opinion.  A witness’s testimony cannot be based on mere speculation and conjecture.”

Id.
 at 850-51 (quoting 
Ammons v. Massey-Ferguson, Inc.
, 663 So. 2d 961, 964-65 (Ala. 1995)) (citations omitted).  The court concluded, “When the expert’s proposed testimony lacks a factual foundation and is speculative at best, it can be of no apparent help to the fact-finder.”  
Stevens
, at 851.

[¶24] The Hawaii Supreme Court relied on many of the federal court decisions cited in this decision to conclude its Civil Rule 56(e) must be read with its Evidence Rule 705 to require expert’s affidavits in a workplace wrongful death action to contain more than bare conclusions.  
Acoba v. General Tire, Inc.
, 986 P.2d 288, 301 (Haw. 1999).  The court noted, “Although expert testimony may be more inferential than that of fact witnesses, in order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues.”  
Id.
 (quotation omitted).  In a case involving the hiring of an alleged sexual molester, the Ohio Court of Appeals addressed expert’s affidavits submitted in connection with a summary judgment motion, stating:

“Pursuant to Civ.R. 56(C), a court may not consider any evidence when ruling on a motion for summary judgment unless it conforms with Civ.R. 56. According to Civ.R. 56(E), ‘[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.’  Thus, affidavits containing opinions, like the one in this case, must meet the requirements in the Rules of Evidence governing the admissibility of opinions.”

Douglass v. Salem Cmty. Hosp.
, 794 N.E.2d 107, 114 (Ohio Ct. App. 2003) (quotation omitted).  
See also
 
Frederick v. Vinton County Bd. of Educ.
, No. 03CA579, 2004 WL 232129, at *5 (Ohio Ct. App. Feb. 5, 2004) (“Expert affidavits offered in support of or in opposition to summary judgment must comply with Civ.R. 56(E) as well as the evidence rules governing expert opinion testimony, Evid.R. 702-705.”).

[¶25] Courts in Illinois and Utah explained the rationale supporting harmonization of Civil Rule 56(e) and Evidence Rule 705.  The Illinois Supreme Court addressed the issue in a personal injury lawsuit and stated:

“The plaintiffs in 
Hayes [v. Douglas Dynamics, Inc.
, 8 F.3d 88 (1st Cir. 1993),] raised essentially the same argument as did the plaintiff in 
Kosten [v. St. Anne’s Hosp.
, 478 N.E.2d 464 (Ill. 1985),] and plaintiff in the case at bar, i.e., that under Federal Rule of Evidence 705, the conclusory assertions made in their experts’ affidavits were sufficient to withstand a motion for summary judgment.  The court in 
Hayes
 disagreed, and affirmed the trial court’s granting of summary judgment.  According to the 
Hayes
 court, such affidavits submitted in opposition to a motion for summary judgment must meet the standards of Rule 56(e), which ‘requires that the nonmoving party “set forth specific facts showing that there is a genuine issue for trial.”’  
Hayes
, 8 F.3d at 92, quoting Fed.R.Civ.P. 56(e).  The court added that the plaintiffs’ reliance upon Rule 705 was ‘largely inapposite’ because that rule ‘was designed to apply in the context of a trial, where cross-examination provides an opportunity to probe the expert’s underlying facts and data and to test the conclusions reached by the expert.’  
Hayes
, 8 F.3d at 92.

“The court in 
Hayes
 further stated:

“The evidentiary rules regarding expert testimony at trial were ‘not intended . . . to make summary judgment impossible whenever a party has produced an expert to support its position.’  We are not willing to allow the reliance on a bare ultimate expert conclusion to become a free pass to trial every time that a conflict of fact is based on expert testimony.  As with all other evidence submitted on a motion for summary judgment, expert affidavits must be reviewed in light of [Rule] 56.”  
Hayes
, 8 F.3d at 92. 

“
See also
 
Merit Motors, Inc. v. Chrysler Corp.
, 569 F.2d 666, 673 (D.C. Cir. 1977) (‘To hold that Rule 703 prevents a court from granting summary judgment against a party who relies solely on an expert’s opinion that has no more basis . . . than . . . theoretical speculations would seriously undermine the policies of Rule 56.  We are unwilling to impose the fruitless expenses of litigation that would result from such a limitation on the power of a court to grant summary judgment’); 
Evers v. General Motors Corp.
, 770 F.2d 984, 986 (11th Cir. 1985) (concluding that Rules 703 and 705 ‘do not alter the requirement of [Rule] 56(e) that an affidavit must set forth specific facts in order to have any probative value’).”  

Robidoux v. Oliphant
, 775 N.E.2d 987, 994-95 (Ill. 2002).  From this, the 
Robidoux
 court concluded, “[T]here is no inconsistency in having one standard for admission of an expert’s testimony at trial and a different, more stringent standard for admission of an expert’s affidavit in support of or in opposition to a motion for summary judgment.  As noted, such an affidavit serves as ‘a substitute for testimony taken in open court.’  Given that cross-examination is unavailable as a means to test an affidavit, it is not surprising that the standard for admission of an affidavit in a summary judgment context would be higher than for the admission of an expert’s opinion at trial.”  
Id.
 at 995 (citation omitted).

[¶26] The Utah Court of Appeals also explained, in a personal injury case stemming from an automobile accident, that more than conclusory expert affidavits were required in summary judgment proceedings:

“The rule requiring an expert affiant to state the factual basis for his or her opinion appears to be at odds with Utah Rule of Evidence 705, which allows an expert to give his or her opinion without stating the facts and data upon which he or she relied.  However, Rule 705 also recognizes that the expert may have to divulge the basis for his or her opinion if the court requires and if requested upon cross examination.  Since an affiant is not subject to cross examination, it makes some sense to require the expert affiant to divulge at least part of the basis for his or her opinion.  Stated another way, Utah R.Civ.P. 56(e)’s explicit requirements that affidavits ‘be made on personal knowledge’ and ‘set forth such facts as would be admissible in evidence,’ together with its implicit recognition that statements in an affidavit must not be conclusory in form and that affidavits not contain unsubstantiated opinions, control in the summary judgment context over Utah R.Evid. 705.”

Gaw v. Utah Dept. of Transp.
, 798 P.2d 1130, 1137 n.10 (Utah Ct. App. 1990) (citations omitted).  The court then explained the type of facts needed to support an expert’s opinions:

“To determine the extent of the factual basis required, we looked to Utah Rule of Evidence 703 which allows an expert to base an opinion on admissible evidence and inadmissible evidence of the kind that experts in the field use.  We concluded that the affidavit was sufficient if it articulated the facts upon which the opinion was based and if the facts were of the ‘type usually relied upon by experts in the field.’”

Gaw
, at 1137 (citations omitted).  
See also
 
American Concept Ins. Co. v. Lochhead
, 751 P.2d 271, 274 (Utah Ct. App. 1988) (concluding “opinion was properly based on the examination of records and materials of a type usually relied upon by experts in his field”).

[¶27] We harmonize N.D.R.Civ.P. 56(e) and N.D.R.Ev. 705 and conclude that the rules of evidence do not alter the requirement in N.D.R.Civ.P. 56(e) for “specific facts” in summary judgment proceedings.  Here, the record indicates Dr. Quast was  one of Perius’s medical providers.  Dr. Quast’s affidavit stated that Perius continued to have persistent pain and that he believed Perius’s pain was a result of traumatic arthritis from an injury in the October 2004 motor vehicle accident.  Dr. Quast opined to a reasonable degree of medical certainty that the medical treatment he had provided Perius and the associated medical expenses were reasonable, necessary and related to the October 2004 motor vehicle accident.  Dr. Quast’s affidavit reflects his opinions were based on Perius’s reports, on an MRI and on his treatment of Perius.  These are the types of facts and sources of information reasonably relied upon by medical doctors when forming opinions about a patient’s medical condition.  
See
 N.D.R.Ev. 703; 
Gaw
, 798 P.2d at 1137.  

[¶28] Dr. Quast’s affidavit inferentially reflects personal knowledge as Perius’s medical provider, sets forth admissible opinions on an ultimate issue to be decided by the trier of fact, and establishes that he was competent to render an opinion about his patient’s condition.  
See
 
Swenson v. Workforce Safety & Ins.
, 2007 ND 149, ¶ 29, 738 N.W.2d 892 (treating physician’s medical opinion about cause of injury may be based on physician’s personal experience in treating patient, a patient’s medical history, and the physician’s education and experience); 
Gonzalez v. Tounjian
, 2003 ND 121, ¶¶ 23-28, 665 N.W.2d 705 (treating emergency room physician qualified to testify as expert about patient’s injuries); 
Collom v. Pierson
, 411 N.W.2d 92, 95-96 (N.D. 1987) (nontreating physician with knowledge, experience, and training qualified as expert).  Although Dr. Quast’s affidavit was minimal, we conclude the affidavit sets forth sufficient facts from a medical provider to raise a factual issue about whether the 2004 motor vehicle accident proximately caused Perius’s claimed injuries and damages. 

[¶29] We reject Nodak’s assertion that 
Halvorson
 and 
Klimple
 require a different result.  In 
Halvorson
, we affirmed a summary judgment dismissal of a plaintiff’s breach of contract action for no-fault benefits.  2008 ND 205, ¶¶ 1, 9, 757 N.W.2d 398.  We rejected the plaintiff’s argument that a motor vehicle accident caused her injuries, because the record included:

“no affidavit from [the plaintiff] or any other competent evidence describing the type of injuries [the plaintiff] received from the accident or showing that her injuries arose out of her occupying the Bottineau Good Samaritan Center’s van at the time of the accident.  Nor does the record contain any medical bills for economic loss–the only type of loss compensated under the North Dakota no-fault insurance law according to N.D.C.C. § 26.1-41-06–attributable to her injuries allegedly sustained in the accident.  Despite [the insurer’s] several requests during discovery and [the plaintiff’s] long list of medical care providers on whom she intended to rely at trial, she has not presented any competent evidence establishing a causal link between her injuries and the June 2005 accident.  The medical records on which [the plaintiff] relies lack any supporting foundation.  Therefore, her reliance on these documents for summary judgment purposes is misplaced.  Records offered without proper foundation fail to meet the requirements in Rule 56 of the North Dakota Rules of Civil Procedure.”

Halvorson
, at ¶ 8.

[¶30] In 
Klimple
, we affirmed a summary judgment dismissal of a plaintiff’s personal injury action, concluding a medical expert’s equivocal testimony on causation was not sufficient to create a genuine issue of material fact.  2007 ND 13, ¶¶ 12-15, 727 N.W.2d 256.  In that case, the expert’s deposition testimony stated a motor vehicle accident “[p]ossibly” caused or “[c]ould have” aggravated the plaintiff’s condition, and we held that testimony was not an admissible medical opinion that the plaintiff’s condition was more likely than not caused by, or aggravated by, the motor vehicle accident.  
Id.
 at ¶¶ 12,15.

[¶31] In both 
Halvorson
 and 
Klimple
, the plaintiffs failed to set forth specific facts showing a genuine issue of material fact for trial.  Here, we have concluded the record includes minimally sufficient facts from one of Perius’s medical providers to raise a genuine issue of fact about whether Perius’s claimed injuries and damages were proximately caused by the 2004 motor vehicle accident.  We therefore conclude the district court erred in granting summary judgment on Perius’s claims against Nodak.

IV

[¶32] We reverse the summary judgment and remand for further proceedings.

[¶33] Daniel J. Crothers

Dale V. Sandstrom

Carol Ronning Kapsner

I concur in the result.

Mary Muehlen Maring

VandeWalle, Chief Justice, concurring specially.

[¶34] 
I hesitantly concur in the majority opinion concluding there is sufficient evidence in this record of disputed issues of material fact to preclude deciding this case on a motion for summary judgment.  Apparently in response to Nodak Mutual’s motion for summary judgment alleging no evidence of causation, Perius added the names and affidavits of additional expert witnesses whose testimony could well be described as conclusory.  In reading the majority opinion I am left with the impression it is more akin to the issue of whether or not the names of the experts and the affidavits satisfied the requirements of N.D.C.C. § 28-01-46, which in professional medical negligence cases requires the plaintiff to provide an affidavit containing admissible expert opinions to support a prima facie case of professional negligence, than it is to the question of whether or not summary judgment was appropriate.  One might ask what are the facts as opposed to the opinion of these witnesses?   

[¶35] Nevertheless, while I reluctantly agree the inferences which might be drawn from the affidavits are sufficient to avoid deciding this case on a motion for summary judgment, this procedure is not a model to be emulated.

[¶36] Gerald W. VandeWalle, C.J.